FRANKIE REID v. ECKERDS DRUGS, INC.

No. 7814SC483

(Filed 3 April 1979)

1. **Uniform Commercial Code § 12 — breach of implied warranty of merchantability — showing required**

    An action for breach of implied warranty of merchantability under G.S. 25-2-314 entitles a plaintiff to recover without any proof of negligence on a defendant's part where it is shown that (1) a merchant sold goods, (2) the goods were not "merchantable" at the time of the sale, (3) the plaintiff or his property was injured by such goods, (4) the defect or other condition amounting to a

Reid v. Eckerds Drugs

breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller.

2. **Uniform Commercial Code § 12— implied warranty of merchantability—failure to warn of dangerous propensities—container and contents**

　　A failure to warn of dangerous propensities of both a container and its contents may, in a proper case, provide grounds for an action to recover damages for breach of implied warranty of merchantability under G.S. 25-2-314(1).

3. **Uniform Commercial Code § 13— aerosol deodorant—ignition of alcohol in deodorant—warranty of merchantability**

　　Plaintiff's action to recover for injuries received when alcohol in deodorant he had applied to himself from an aerosol can ignited when he lit a cigarette was cognizable under the theory of breach of implied warranty of merchantability although plaintiff alleged no defect in the deodorant itself.

4. **Uniform Commercial Code § 13— aerosol deodorant—compliance with federal standards—no merchantability as matter of law**

　　An aerosol deodorant was not merchantable as a matter of law because it conformed to certain federally-established standards for flammability.

5. **Uniform Commercial Code § 12— use of product in normal way—expectation of freedom from injury—warranty of merchantability**

　　Where a product is being used for its intended purposes in a normal way, the expectation of the consumer that so used it will not injure him may reasonably be found to lie within the warranty of fitness for ordinary purposes provided by G.S. 25-2-314(2)(c).

6. **Uniform Commercial Code § 13— ignition of alcohol in aerosol deodorant—inadequate warnings—warranty of merchantability**

　　In an action to recover under the implied warranty of merchantability of a can of aerosol deodorant for injuries received when alcohol in deodorant plaintiff had applied to himself ignited when plaintiff lit a cigarette, warnings on the deodorant can that it should not be sprayed toward a flame or exposed or stored at a temperature above 120°F were not sufficient as a matter of law to entitle defendant merchant to summary judgment, since no suggestion was made that the contents of the can might be flammable once they reached their ultimate destination, and the fact that the contents were 92.77% alcohol by volume was not disclosed. Furthermore, plaintiff's allegations and evidence were sufficient to present a question for the jury as to whether the inadequacy of warnings on the aerosol can was the proximate cause of plaintiff's injuries.

APPEAL by plaintiff from *McKinnon, Judge.* Judgment entered 2 March 1978 in Superior Court, DURHAM County. Heard in the Court of Appeals 2 March 1979.

*Grover C. McCain, Jr., for plaintiff appellant.*

*Newsom, Graham, Strayhorn, Hedrick, Murray, Bryson and Kennon, by O. William Faison, for defendant appellee.*

MARTIN (Robert M.), Judge.

Plaintiff brought this civil action to recover damages arising on personal injuries sustained, allegedly resulting from the use of an aerosol deodorant sold to plaintiff's wife by defendant. Plaintiff's evidence tended to show that on 23 September 1976, he was preparing to go to work and liberally applied deodorant from an aerosol can of 5-day antiperspirant to his underarms and neck. He then put the can of deodorant down, walked across the room to where his shirt was, took up a cigarette and proceeded to light it with a match from a paper book of matches. When he struck the match, he heard a loud report and he burst into blue flame. He sustained severe burns to his upper torso, the burns following the pattern of the application and running of the deodorant. As a result of his injuries, plaintiff was briefly hospitalized and lost over five weeks from work, and now has large areas of scar tissue where he was burned. Plaintiff also testified that he was familiar with the warning on the aerosol can concerning use near flame or heat, and that the deodorant felt cold when he applied it.

Defendant introduced evidence tending to show that experimental evidence, derived from tests conducted by an expert, indicated that the deodorant would not ignite unless a paper match was no more than one and one-fourth inches (1¼") from the surface to which the deodorant had been applied. Other evidence was introduced to show that vast quantities of this deodorant had been marketed without receiving any complaint other than plaintiff's.

It appears from the evidence that the deodorant is approximately 92% alcohol in the aerosol spray can. The warning and directions placed upon the can are as follows:

WARNING: Use only as directed. Do not apply to broken, irritated or sensitive skin. If rash or irritation develops discontinue use. Never spray towards face or flame. Do not puncture or incinerate can. Do not expose or store at temperature above 120°F. Intentional misuse by deliberately concentrating and inhaling the contents can be harmful or fatal. Keep out of reach of children.

Plaintiff's complaint alleged counts of negligence and breach of warranty against Eckerds Drugs, Inc., the store that retailed

the deodorant, and against J. P. Williams Company, Inc., the manufacturer. After receiving plaintiff's evidence, and upon motions and affidavits from the defendant, the trial judge entered summary judgment against plaintiff on all counts pursuant to Rule 56, North Carolina Rules of Civil Procedure. Plaintiff appeals, proceeding solely on his claim of breach of warranty against defendant Eckerds Drugs, Inc. We reverse and remand for trial.

Plaintiff has indicated in his brief that he is abandoning any appeal or argument as to tort aspects of his action, but will instead rely upon his theory of breach of implied warranty of merchantability. He derives this theory from the language contained in the Uniform Commercial Code, as adopted by our Legislature and codified in G.S. 25-2-314. We set out the statute in pertinent part below:

§ 25-2-314. Implied warranty. Merchantability; usage of trade.—(1) Unless excluded or modified (§ 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale. (2) Goods to be merchantable must be at least such as

* * *

(c) are fit for the ordinary purposes for which such goods are used; and

* * *

(e) are adequately contained packaged and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

Because any right of recovery on plaintiff's part must be found to exist within or under these implied warranty provisions, we will first analyze the nature and scope of the implied warranty of merchantability and actions thereon.

We note at the outset that this is a novel question for the appellate courts of this State: will a duty to warn of dangerous propensities be found to exist as part of the implied warranty of merchantability? Or, to couch the question more precisely in *Code* language, is a product merchantable where, although some directions for its use and some warnings of the dangers inhering to use under certain circumstances are given, the directions and warnings as a whole do not adequately inform the user of the potential dangers?

[1] It is now generally acknowledged that the action for breach of warranty is an offspring of mixed parentage, aspects of it sounding in both tort and contract, but following strictly the rules and precedents of neither. In its pure form, an action for breach of implied warranty of merchantability under G.S. § 25-2-314 (and all other analogous state enactions of U.C.C. 2-314) entitles a plaintiff to recover without any proof of negligence on a defendant's part where it is shown that (1) a merchant sold goods, (2) the goods were not "merchantable" at the time of sale, (3) the plaintiff (or his property) was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller. The action is akin to the action of strict liability in tort, except that proof of negligence and foreseeability of injury are not required. It is also akin to a contract action, except that privity requirements have become considerably more relaxed by the various courts in recent years and, further, affirmative defenses of disclaimer and failure to give timely notice may be asserted by the seller. We abandon as hopeless any efforts to characterize the warranty action as either tort or contract, but will draw upon both types of precedent as appropriate in fashioning our view of "merchantability" under G.S. § 25-2-314. As was stated by Justice Sharp (now Chief Justice) in her concurring opinion in *Terry v. Bottling Co.*, 263 N.C. 1, 138 S.E. 2d 753 (1964) (where plaintiff was suing over a green fly found in her bottled soft drink):

> Strict liability for a food manufacturer's or supplier's default is *sui generis*. As to it, distinctions between tort and contract, either procedural or substantive, are artificial and unjustified, so that the law of primary and secondary liability

Reid v. Eckerds Drugs

> ought to be appropriate irrespective of whether warranty is descended from tort or contract.
>
> . . . Whether we call the rule for which I contend strict liability in tort, as the professors and chaste logic might require, or an implied warranty of fitness imposed by law makes no difference. *Id.* at p. 12, 13, 138 S.E. 2d 760, 761.

We likewise find any distinctions between tort and contract in this warranty action to be artificial and unnecessary to our consideration of merchantability. For general commentary on evolution of this area of the law, *see,* J. White and R. Summer, *Handbook of the Law under the Uniform Commercial Code* § 9-6 (1972); Hodge, *Products Liability: The State of the Law in North Carolina,* 8 Wake Forest Law Rev. 481 (1972); Annotation, 83 A.L.R. 3rd 694 (1978); N.C.G.S. § 25-2-314, Official Comment ¶¶ 10, 11 and 13 and North Carolina Comment; *Terry v. Bottling Co., supra;* 2 L. Frumer and M. Friedman, *Products Liability* § 16.01 *et seq.*

> Resolution of these questions [concerning definitional aspects and parameters of merchantability] will depend upon case law and further legislation which can properly evaluate changing standards of fitness in light of the competing interests of seller and buyer. . . . The UCC merely provides a conceptual framework for the deeper and more exacting analysis of merchantability.

C. Bunn, H. Snead and R. Speidel, *An Introduction to the Uniform Commercial Code* § 2.26(B) (1964). Noting the general absence of statutory constraints upon the definition of merchantability, we turn to a detailed factual analysis of the case *sub judice* to assist our consideration of the question posed.

[2, 3] Two things are apparent with reference to the aerosol deodorant can: (1) the product contained therein was not available to the ultimate consumer, and it was not useable by him as it was constituted, without the assistance of the pressurized aerosol can and its propellant. (We are not unaware that non-aerosol deodorant formulations are available; we are merely observing that for the consumer of an aerosol spray deodorant to avail himself of the deodorant, he must also purchase and use the aerosol can. The one is an integral part of the other and the com-

bination of product and dispenser are the "good" that reaches the consumer for his ultimate use.) Hence, any effort to distinguish between the deodorant and its aerosol applicator is unrealistic and specious; (2) the directions for use of the product clearly contemplate the use of the product as contained and dispensed by the aerosol can. The warnings of the label are easily understood to refer to the can itself and its proper use. No specific warnings about the use and formulation of the deodorant itself are given. Therefore, when it is assumed that both the can and its contents are components of the product for the ultimate consumer, it must also be assumed that the labeling and packaging of the whole product should fairly be expected to warn of any dangerous properties of both contents *and* container, especially where the normal and proper use of the product dictates that the contents of the container will be expelled from the container and will be exposed to conditions, after being thus expelled, which are not necessarily similar to the conditions surrounding the container. Defendant vigorously contends that, because plaintiff has failed to allege or prove any defect in the deodorant (the contents of the can) itself, he may not recover on a theory of breach of implied warranty of merchantability. However, when one views the product holistically, and especially where dangerous propensities under specified conditions inhere to both container and contents as well as their several interfaces, a failure to adequately warn of all such propensities may, in a proper case, render a product unmerchantable under G.S. § 25-2-314(2)(c), (e) and (f) and provide grounds for an action to recover damages for breach of the implied warranty of merchantability embodied in G.S. § 25-2-314(1), and we so hold. "No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole." Restatement of the Law, Torts 2d, p. 352, comment h.

At least two other state courts have similarly concluded that a duty to warn may be embraced in the implied warranty of merchantability. The court in *Hanson v. Murray*, 190 Cal. App. 2d 617, 12 Cal. Reptr. 304 (1961) (involving damage done to nearby citrus crops by spray applied to a carrot field) stated:

> Failure to warn . . . of the danger under these facts were both actionable negligence and the factor which caused the warranty to be breached. The existence of negligence does

not obviate the possibility that a warranty was breached and it is clear that the same operative facts can, under proper circumstances, give rise to both causes of action.

*Id.* at 624, 12 Cal. Reptr. 308. *Also see, Hamon v. Digliani*, 148 Conn. 710, 174 A. 2d 294 (1961) holding that, where a product was advertised as "safe and easy" on hands, that product was not merchantable where it was capable of causing burns on contact and where warnings did not explicitly so indicate.

[4] Defendant has also argued that, since the deodorant in question conforms to certain federally-established standards for flammability, it cannot as a matter of law be unmerchantable. We do not agree. It is becoming well-established that proof of compliance with government standards is no bar to recovery on a breach of warranty theory. Although such evidence may well be pertinent to the issue of the existence of a breach of any warranty, it is not conclusive. *See Gottsdanker v. Cutter Laboratories*, 182 Cal. App. 2d 602, 6 Cal. Reptr. 320 (1960) (involving polio vaccine with live polio virus in it); *Brown v. Globe Laboratories*, 165 Neb. 138, 84 N.W. 2d 151 (1957) (involving a swine vaccine); *Jacob E. Decker & Sons v. Capps*, 144 S.W. 2d 404 (Tex. Civ. Appeals 1940). *Cf., Savage v. Peterson Distributing Co.*, 379 Mich. 197, 150 N.W. 2d 804 (1967) holding it error to exclude such evidence. *Also see, generally*, 2 L. Frumer and M. Friedman, *Products Liability* § 16.03 [4][a][i].

The instant case is distinguishable from *Coffer v. Standard Brands*, 30 N.C. App. 134, 226 S.E. 2d 534 (1976). Plaintiff does not contend that there were any impurities, natural or otherwise, in the deodorant. He contends rather that he was given insufficient notice of the natural properties of the product as it was constituted and that the label contained insufficient data from which he could have reasonably inferred any danger of what in fact occurred.

[5, 6] Having thus determined that plaintiff's cause of action is cognizable under a breach of the implied warranty of merchantability as embodied in § 25-2-314 of the North Carolina Uniform Commercial Code, we must consider whether the warnings and instructions concerning the product and placed upon the label of the container (as quoted, *supra*) are sufficient, as a matter of law, to give plaintiff adequate notice of any dangers and thus entitle

defendant to judgment as a matter of law. We conclude that they were not so sufficient. The warnings and instructions, when read as a whole, may easily be construed as referring to the product and container *as a unit, e.g.* "Do not expose or store at temperature above 120° F." clearly contemplates both aerosol can and contents as a whole, since it is highly unlikely that a consumer will be storing the deodorant outside its container; the sentence preceding that one stating "Do not puncture or incinerate can" is reinforcement for the idea that the warnings are directed at the product and the can together. No suggestion is made that the contents might be flammable once they have reached their ultimate destination (*i.e.,* armpits, etc.) and the fact that the contents are 92.77% alcohol by volume is not disclosed. The evidence is undisputed that plaintiff used the aerosol can in accordance with its directions and warnings, set the can down, walked across a room and then lit his cigarette, simultaneously igniting the alcohol in the deodorant he had applied to himself, causing it to burn with a blue flame. The instructions accompanying a product have been found to be "an integral part of the warranty," *Helene Curtis, Inc. v. Pruitt,* 385 F. 2d 841, 856 (5th Cir. 1967). The court in *Reddick v. White Consolidated Industries, Inc.,* 295 F. Supp. 243, 250, 6 U.C.C. Rep. 303, 312 (SD Ga. 1969) observed:

> If a manufacturer furnishes instructions as to the manner in which a product is to be used, the consumer is entitled to think that so used it will not injure him. There is an implied warranty that the goods are fit for that particular use.

Although the court in Reddick was speaking to an implied warranty of *fitness* rather than of *merchantability,* we find that where the product was being used for its intended purposes in a normal way, the same expectation of the consumer may reasonably be found to lie within the warranty of fitness for ordinary purposes of G.S. § 25-2-314(2)(c). We further find that the labeling of the deodorant, when viewed in the light most favorable to the plaintiff (who was the non-moving party) and in view of our interpretations of G.S. § 25-2-314(e) and (f), was not sufficient as a matter of law to entitle defendant to summary judgment. A question of fact as to the sufficiency of the packaging and labeling clearly exists and is one for the jury. In *Center Chemical Co. v. Parzini,*

234 Ga. 868, 218 S.E. 2d 580, 17 U.C.C. Rep. 1211 (1975) the Georgia Supreme Court noted:

> Many products cannot be made completely safe for use and some cannot be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and *accompanied with adequate warnings* [emphasis supplied] they cannot be said to be defective. To hold otherwise would discourage the marketing of many products because some danger attended their use.

*Id.* at 870, 218 S.E. 2d 582, 17 U.C.C. Rep. 1213. On remand to the Georgia Court of Appeals, that court observed:

> The jury is first to determine whether the product was defective. In this it has for consideration the manufacture, the packaging *and the warnings connected with its use*. [Emphasis supplied.]

*Parzini v. Center Chemical Co.*, 136 Ga. App. 396, 399, 221 S.E. 2d 475, 478 (1975). While *Center Chemical Co.* was decided under a hybrid products liability statute (Ga. Code Ann. § 105-106) which combines elements of strict liability in tort with warranty concepts and the concept of "merchantability," we find the reasoning persuasive and applicable to the instant case. Whether the product in question, when viewed as a whole (including contents, packaging, labeling and warnings) was merchantable is a jury question not susceptible of summary adjudication.

Finally, we consider whether plaintiff adequately pleaded and proved the essential elements of his claim for relief so as to entitle him to withstand defendant's motion for summary judgment. It is not contested that defendant Eckerds Drugs, Inc. was a "merchant" within the purview of G.S. § 25-2-104(1) (and, accordingly, of G.S. § 25-2-314(1) ). Plaintiff is in privity with defendant by virtue of G.S. § 25-2-318. Failure to give timely notice of breach pursuant to G.S. § 25-2-607(3)(a) has not been asserted as an affirmative defense and therefore is deemed waived. Plaintiff's arguments of unmerchantability are directed to the aerosol can's labeling and warnings and not only to its contents; all the evidence tends to show that the labeling of the particular can owned by plaintiff was identical to that on all other similar cans of deodorant. Therefore, it is not necessary for plaintiff to prove

that no alterations were made to the *contents* of the can after the time of sale. No argument having been made that the labeling or warnings on the can were altered in any way after the time of sale, plaintiff has made a *prima facie* showing that the product was unmerchantable when defendant sold it. (Indeed, tests by defendant's expert did indicate that the contents of the can in question were different from the standard formulation, being approximately 60% alcohol rather than 92.77% alcohol. We may take judicial notice that such a lessening of the alcohol content would, if anything, *reduce* rather than increase any danger of vapor ignition under the circumstances described by plaintiff.) Plaintiff has alleged and proved his injury, and alleges that defendant's breach of warranty was responsible for that injury. Therefore, proximate causation is the only remaining issue for our discussion.

Defendant vigorously contends that the deodorant, after having been applied to plaintiff's body, could only have been ignited by a portion of the paper match breaking off from the match head and striking plaintiff's body, thereby igniting the alcohol (and plaintiff with it). We do not express any opinion as to the weight or credibility of defendant's evidence on this point; we find it, however, to be irrelevant and incompetent within the context of the action as it is presently pleaded. Where a consumer has relied upon warnings, directions and implied warranties attached to a product and is then injured by the product although using it according to those directions, etc., the appropriate question to pose is whether, in view of plaintiff's reliance upon such warnings, directions, and implied warranties, was the inadequacy of any warnings, etc., the proximate cause of plaintiff's injuries? In the event a jury should determine that the warnings contained on the can were sufficient notice of danger to plaintiff so as to render the deodorant merchantable, then that jury would never reach the issue of proximate causation, as plaintiff would be denied recovery as a matter of law. However, if the warnings are not found to be so sufficient, inquiry as to proximate causation would focus upon plaintiff's reliance upon the warnings and instructions and not what agent was physically responsible for the ignition of the flame. It would be anomalous and patently unjust to deny plaintiff a recovery on the basis of contributory "negligence" or other fault when the language of the warnings and instructions

for the product do not proscribe the course of conduct which resulted in the ignition of the flame and which course may have been pursued in justifiable reliance upon those warnings and instructions. The "blue flame" described and experimentally engendered by defendant's expert is markedly similar to the "blue flame" which engulfed plaintiff. Arguably, *neither* flame was ignited under conditions described as potentially dangerous by the deodorant can's label.

For the reasons stated above, the entry of summary judgment against plaintiff on his claim for relief based on breach of implied warranty of merchantability is reversed. The cause is remanded for further proceedings and trial not inconsistent with this opinion.

Reversed and remanded.

Judges MITCHELL and WEBB concur.