Clinton PATTEN et al., Plaintiffs,

v.

LEDERLE LABORATORIES,
Defendant.

Civ. No. C85–0883G.

United States District Court,
D. Utah, C.D.

Feb. 12, 1987.

Lynn C. Harris, Boyd McDowell, III, for plaintiffs.

Thomas L. Kay, Mark O. Morris, JoAnn M. Zaleskas, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on January 14, 1987, pursuant to defendant's motion for partial summary judgment. Plaintiffs were represented by Lynn C. Harris and Boyd McDowell, III, and defendant was represented by Thomas L. Kay, Mark O. Morris and JoAnn M. Zaleskas. Counsel for the parties submitted memorandums of law and presented oral argument, after which the court took the matter under advisement. The court now being fully advised, sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiffs in this case are the parents of Shane Patten. They seek to recover damages arising out of the wrongful death of their infant son. Shane Patten was vaccinated against diphtheria, pertussis, and tetanus on September 21, 1984, when he was approixmately two months old. On September 22, 1984, he died. Plaintiffs allege that an adverse reaction to diphtheria, pertussis and tetanus (DPT) vaccine caused their son's death, and have pleaded causes of action in strict liability, negligence and breach of warranty.

Defendant Lederle Laboratories manufactures "Tri-Immunol," the vaccine the physician used. Tri-Immunol is a whole cell DPT vaccine. In a whole cell vaccine the pertussis component contains, in an inactivated state, all the elements found in pertussis cells. The Food and Drug Administration (FDA) regulates the production of Tri-Immunol and of all other DPT vaccines, pursuant to provisions of the Public Health Service Act (PHSA), 42 U.S.C. § 215, *et seq.* and the Federal Drug and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.*, and rules and regulations promulgated thereunder. Tri-Immunol has been produced for the past 36 years under license from the FDA.

## ANALYSIS

Plaintiffs seek damages in tort based upon the claim that defendant's DTP vaccine was defectively designed and tested. In response, defendant argues that the Supremacy Clause of the United States Constitution, art. VI, cl. 2, bars plaintiff's claim. That is, defendant claims that state tort actions for defective design and testing of Tri-Immunol are preempted by federal law.

In *Silkwood v. Kerr-McGee*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984), the Supreme Court stated that state law may be preempted in two ways. First, state law is preempted where Congress has evidenced an intent to occupy a field. In such situations any state law in the field in question is preempted. *Id.* at

248, 104 S.Ct. at 621; *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721, 75 L.Ed.2d 752 (1983); *Fidelity Federal Savings & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Second, even if Congress has not evidenced an intent to occupy the field state law is preempted to the extent that it actually conflicts with federal law, *Silkwood,* 464 U.S. at 248, 104 S.Ct. at 621; *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where the state law impedes accomplishment of the federal goal, *Silkwood,* 464 U.S. at 248, 104 S.Ct. at 621; *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

I. PREEMPTION BECAUSE OF CONGRESSIONAL INTENT TO OCCUPY THE FIELD

■ The main issue is whether Congress intended by enactment of the PHSA or the FDCA to preclude state tort actions based upon alleged improper design and testing of DPT vaccine. Congressional intent to occupy a field can be express or implied. Congress may evidence its intent to occupy a field by express words in a statute, or by express words in the statute's legislative history. *Silkwood,* 464 U.S. at 249–50, 104 S.Ct. at 621–22. In the absence of explicit preemptive language in the statute or the legislative history, the scheme of regulation that the statute sets up may be so pervasive that courts infer an intent to occupy the field. *Rice,* 331 U.S. at 230, 67 S.Ct. at 1152. Similarly, an Act of Congress may touch a field in which the federal interest is so dominant that courts will assume the federal law precludes enforcement of state laws on the same subject. *Id.* The object sought to be obtained by the federal law and the character of the obligations it imposes may also provide evidence from which a court may infer intent to occupy the field. *Id.* In this case, defendant does not contend and the court has

not found that language in either the PHSA or the FDCA expressly preempts state tort actions based on alleged defects in the design or testing of vaccines. Rather, we are confronted with defendant's contention that the scheme of federal regulation in the field of vaccine design and testing under these Acts is "so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it," *Rice,* 331 U.S. at 230, 67 S.Ct. at 1152, versus plaintiff's contention that Congress intended to preserve civil tort remedies notwithstanding the pervasive federal regulation.

Defendant contends that Congressional intent to occupy the field of safety regulation in drug design and testing is evidenced by the pervasive scheme of regulations the FDA has promulgated pursuant to authority Congress has committed to the FDA under the PHSA and the FDCA. Defendant then argues that an award of damages pursuant to state law regulates as effectively as forms of preventive relief. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). Because awards of damages under state law are regulatory in effect, defendant submits that they fall within the occupied field. This court recognizes that the scheme of regulation the FDA has promulgated pursuant to its authority under the PHSA and the FDCA indeed is far-reaching. The Supreme Court has held that such "federal regulations have no less preemptive effect than federal statutes." *Fidelity Federal,* 458 U.S. at 153, 102 S.Ct. at 3022. We also realize that when an administrator, pursuant to her statutory authority, promulgates regulations intended to preempt state law, a court's inquiry is limited. *Id.* at 154, 102 S.Ct. at 3022. The court should not disturb the agency's accommodation "unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *United States v. Shimer,* 367 U.S. 374, 381–82, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961).

■ In this case, we are confronted with recent legislation in the field of vaccine regulation. On November 14, 1986, Congress enacted the "National Childhood Vaccine Injury Act of 1986," (the Act) which added a new title to the PHSA. Act of November 14, 1986, Pub.L. No. 99–660, 100 Stat. 3743. This Act is Congress' most recent pronouncement regarding its intent with respect to the preemptive effect of the PHSA and the FDCA in the area of vaccine design and testing. Analysis of the Act and its legislative history is necessary in the determination of alleged preemption from pervasive regulations by the federal government. The new title in the PHSA establishes a program for vaccine research, sets up a program to compensate persons who sustain a "vaccine-related injury or death," and requires vaccine manufacturers and health care providers administering vaccines to keep records and make reports. The Act's stated purpose is "to achieve optimal prevention of human infectious diseases through immunization and to achieve optimal prevention against adverse reactions to vaccines." The legislative history of the Act, and the structure of the Act itself, provide ample evidence that Congress has not and does not now intend to forbid States from providing tort remedies for vaccine-related injuries despite FDA regulation pursuant to the PHSA and FDCA.

As to the legislative history, the House Committee on Energy and Commerce, to whom the Act was referred, explained the background and need for legislation providing compensation as follows:

... for the relatively few who are injured by vaccines—through no fault of their own—the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered. *Currently, vaccine-injured persons can seek recovery for their damages only through the civil tort system or through a settlement arrangement with the vaccine manufacturer.* Over time, neither approach has proven satisfactory. Lawsuits and settlement negotiations can take months and even years to complete. Transaction costs—including attorneys' fees and court payments—are high. And in the end, no recovery may be available. Yet futures have been destroyed and mounting expenses must be met.

This approach has also been ineffective for the manufacturers of childhood vaccines. This has become especially true in more recent years as the number of lawsuits—particularly those concerning the DPT vaccine—has increased.

H.Rep. No. 908, 99th Cong., 2nd Sess., pt. 1, at 6 (1986) (emphasis added), *reprinted in* 1987 U.S.Code Cong. & Admin.News 6287, 6344, 6347. From the foregoing, it is clear that Congress began with the assumption that in the absence of the legislation under consideration, state tort law would apply. The House Committee acknowledged that damages may be recovered through the civil tort system notwithstanding the FDA's exclusive regulatory authority over safety regulation of drug design and testing. One of the purposes of the bill was to remedy problems in the current scheme of vaccine injury compensation.

Turning to the structure of the Act itself, there is additional indication that Congress did not intend that state tort remedies for vaccine injuries be forbidden by regulation under the PHSA or the FDCA. Under the new program, vaccine-injured persons are divided into three general groups. First, under section 2116(b) of the Act those who were injured by a vaccine administered more than eight years before the enactment of the Act are not eligible for the compensation programs. It is noted in the legislative history as to that section that the Act makes "no changes from current law in such persons' legal rights or remedies." *Id.*, 1987 U.S.Code Cong. & Admin. News at 6354. Second, under sections 2111(a)(5) and 2111(a)(6) of the Act those who were injured by a vaccine administered less than eight years before enactment of the Act are eligible for compensation, but are not required to enter the compensation programs. The legislative history reveals that such persons may have civil tort actions pending at the time of enactment, and may elect to maintain such actions, or may

"elect to withdraw [such] action[s] without prejudice and enter the compensation system." *Id.*, 1987 U.S.Code Cong. & Admin. News at 6355. Third, under section 2111(a)(2) of the Act those who are injured by a vaccine administered after enactment of the Act must complete the compensation proceeding and reject its judgment or award before pursuing civil action against a manufacturer. But civil action is *not foreclosed* even to this class. It is clear to the court that the scheme established by the language of the Act itself demonstrates that Congress contemplated that civil tort remedies for vaccine-related injuries have been available, are now available, and will continue to be available under certain circumstances, even after the effective date of the Act.

## II. PREEMPTION IN THE ABSENCE OF CONGRESSIONAL INTENT TO OCCUPY THE FIELD

### A. Actual Conflict with Federal Law

Lederle argues that plaintiff's claim in this case must be preempted because any jury consideration of drug design and testing would directly conflict with federal law. In this regard, defendant argues that if tort actions for defective design and testing are to be recognized at all, they must be recognized only where a manufacturer fails to comply with some FDA rule or regulation related to design or testing. Since the FDA has found Tri-Immunol to be safe, defendant contends that a jury may not be allowed to find otherwise. In essence, the argument is that compliance with FDA regulations must constitute conclusive evidence of compliance with the standard of due care. Otherwise, it is said, tort actions will disrupt the federal regulatory scheme.

■ Contrary to defendant's contentions, this court considers that the Act and its history indicate Congressional intent to allow tort actions in spite of compliance by the manufacturer with FDA regulations. One of the purposes of the Act was to make it *easier* to get compensation. To achieve that purpose the Act creates a "no fault" compensation system. Another pur-

pose of the Act, however, was to make a manufacturer's liability more predictable and thus to make the child vaccine market more stable. To achieve this purpose the Act increases the barriers to recovery outside the no fault compensation system. Section 2122 of the Act establishes certain "standards of responsibility" with respect to civil actions brought for damages for vaccine-related injuries or deaths. Section 2122(b) provides that no vaccine manufacturer shall be liable for damages from a vaccine-related injury that was the result of side effects that were unavoidable even though the vaccine was, (1) properly prepared, and (2) accompanied by proper direction and warnings. The Act creates a presumption that a vaccine was accompanied with proper direction and proper warnings if the manufacturer shows that it complied with all requirements under the FDCA and under section 351 of the PHSA. Significantly, the Act does *not* establish such a presumption with respect to "proper preparation." Even the presumption of proper direction and warning is not conclusive. A plaintiff may overcome the presumption by a showing of clear and convincing evidence that the manufacturer failed to exercise due care notwithstanding its compliance with federal regulations.

If the act was intended to *increase* the barriers to recovery of damages in civil actions, it is fair to assume that Congress believed that the presumption it created did not exist under pre-Act law. In the legislative history it is noted that "the establishment of these standards are the *only new requirements that affect State law regarding actions for vaccine-related injuries or death;* all other aspects of State law remain unchanged." *Id.*, 1987 U.S. Code Cong. & Admin.News at 6366. This evidences Congressional intent that civil tort actions are permissible in spite of compliance with FDA regulations.

### B. Impeding Accomplishment of Federal Policies

■ Defendant's final argument is that prosecution of state tort actions regarding vaccines will impede accomplishment of the dominant federal policies of maximizing

childhood vaccination and maintaining national uniformity in drug regulation. The defendant cites the Vaccination Assistance Act of 1962, Pub.L. No. 87–868, 76 Stat. 1155 (codified as amended at 42 U.S.C.A. § 247b.(1982 & West Supp.1986)) in support of the first of its contentions. The Vaccine Assistance Act of 1962 provided funds to support state vaccination programs. The stated purpose of the Vaccine Assistance Act was "to assist states and communities to carry out intensive vaccination programs designed to protect their populations...." However, this purpose is not to be achieved at all costs. Section (g) of the Vaccine Assistance Act itself provides,

> Nothing in this section shall be construed to require any State or any political subdivision or instrumentality of a State to have an intensive community vaccination program which would require any person who objects to immunization to be immunized or to have any child or ward of his immunized.

The Vaccine Assistance Act provides permissive grants "to assist" states. It is not mandatory. We think this federal policy of maximizing vaccination can bear any tension created by allowing state tort actions for defective design and testing of DPT vaccine.

■ As evidence of the dominant federal interest of national uniformity in drug regulation, the defendant cites statements made by the FDA. As noted above, we realize that pursuant to her statutory authority, an administrator may promulgate regulations, and may make statements on her own authority. However, the federal government does not always speak with one voice and it is the intent of Congress that determines the scope of the preempted field. In such situations, the pronouncements of Congress must control over contrary statements by administrators. Our review of the PHSA and the FDCA in light of the National Childhood Vaccine Injury Act convinces us that the federal interest is not as absolute as defendant would have it be. The Act evidences Congressional willingness to allow state tort remedies even though such may pose obstacles to uniform drug regulation.

Defendant's motion for summary judgment is denied.

This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.