**Lauren FOYLE, By and Through her Guardian Ad Litem, Duncan McMILLAN, Robert S. Foyle and Kimberley S. Foyle, Plaintiffs,**

v.

**LEDERLE LABORATORIES, a Division of American Cyanamid Co., a Corporation, Defendant.**

**No. 85–1620–CIV–5.**

United States District Court, E.D. North Carolina, Raleigh Division.

Dec. 2, 1987.

John P. Edwards, Elizabeth F. Kuniholm, Tharrington, Smith & Hargrove, Raleigh, N.C., for plaintiffs.

Charles E. Nichols, Kenneth Kyre, Jr., Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, N.C., for defendant.

## ORDER

TERRENCE WILLIAM BOYLE,
District Judge.

The defendant's motion for partial summary judgment on several issues is before the court at this time. A hearing was held on October 29, 1987, at which time the court heard argument on these issues.

### FACTUAL BACKGROUND

On November 1, 1982, Lauren Foyle, then age two months, received a DPT vaccination. The vaccination is designed to pre-

vent a child from contracting diptheria, pertussis (whooping cough) and tetanus. The vaccine was produced by Lederle Laboratories and marketed under the brand name Tri–Immunol. Over the next several days Lauren Foyle suffered seizures as a result of a reaction to the vaccination. She was admitted to the hospital on November 14, 1982, for treatment and was later diagnosed as having severe neurological disorders and irreversible brain damage.

Lauren Foyle's parents, acting as guardian for their daughter, brought this action against Lederle in Wake County Superior Court on October 31, 1985. The case was subsequently removed to this United States District Court on November 29, 1985. Plaintiffs charge that Lederle was negligent in developing, testing, producing and marketing Tri–Immunol and that this negligence was the cause of Lauren Foyle's injuries. Plaintiffs also allege that Lederle is liable on the grounds of breach of warranty, strict liability and failure to warn. Finally, plaintiffs assert that they have suffered severe emotional and mental distress because of the injuries to Lauren Foyle.

After answer and discovery, defendant filed a motion for partial summary judgment on several of plaintiffs' claims. Specifically, defendant moves to dismiss the negligence claims on the grounds that federal law preempts a state law cause of action. Defendant also argues that even if there is a state law claim, the standard of care is the standard announced in the federal regulations and this standard has been met. Defendant also urges summary judgment on the breach of warranty, strict liability, failure to warn and emotional distress causes of action.

## ANALYSIS

### I. Preemption

■ The concept of preemption has its roots in the Supremacy Clause of the Constitution, art. VI, cl. 2. There are two types of preemption; express and implied. *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985); *Jones v. Rath Packing*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Express preemption occurs when Congress expresses an intent that federal law is to be dominant. In the absence of an express intent by Congress, state law can be preempted by implication. *Hillsborough*, 105 S.Ct. at 2375. Implied preemption occurs when Congress legislates the federal government into a dominant or all-inclusive position in the field. Implied preemption can also occur when the scope of the federal legislation is less than dominant but comes into direct conflict with state law. In these cases the federal law is supreme by implication. Courts are generally reluctant to imply preemption, however, as Congress is presumed to be aware of its power to expressly preempt state law. *Hillsborough*, 105 S.Ct. at 2376.

■ In the present case defendant, Lederle, argues that state tort remedies for DPT vaccine-related injuries have been preempted by the provisions of the Federal Food, Drug, and Cosmetic Act (FDCA) 21 U.S.C. § 301 *et seq.* Through the Act, the Food and Drug Administration (FDA) regulates all facets of testing and production of DPT vaccines. Lederle does not argue, however, that the FDCA expressly preempts state law. Indeed, there is no express statement in the Act that precludes state tort remedies for vaccine-related injuries. Instead, Lederle argues that the wide scope of the regulations promulgated under the Act preempt a state cause of action. Lederle claims that a jury verdict against it would result in a direct conflict between the FDA regulations and state law.

There is no question that the FDA regulations are pervasive with respect to DPT vaccines. 21 C.F.R. §§ 610, 620. Some courts have justified preemption findings on the broad scope of the FDA regulations. *Abbott v. American Cyanamid*, mem. op., No. 86–856–A (E.D.Va. March 9, 1987); *Hurley v. Lederle Laboratories*, 651 F.Supp. 993 (E.D.Tex.1986). The *Abbott* and *Hurley* courts, however, fail to consider or properly weigh the significance of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa–1 *et seq.* For that

reason this court finds that they are not dispositive of the preemption issue.

The majority of courts recently addressing this issue, and considering the Vaccine Act, have held that the intent of Congress to preserve state tort actions overrides the pervasive nature of the FDA regulations. *Patten v. Lederle Laboratories,* 655 F.Supp. 745 (D.Utah 1987); *Martinkovic v. Wyeth Laboratories,* 669 F.Supp. 212 (N.D. Ill.1987); *Graham v. Wyeth Laboratories,* 666 F.Supp. 1483 (D.Kan.1987). This court joins those courts that hold that despite the pervasive nature of the FDA regulations, the provisions of the National Vaccine Act of 1986 manifest an overriding intent to preserve state tort remedies.

The National Vaccine Act of 1986 sought to alleviate the problems surrounding vaccine-related injuries. The Act provides for a fund from which injured parties may receive compensation if all requirements of the Act are met. The Vaccine Act is replete with references to the state tort system for redress of vaccine-related injuries. Under the Act, an applicant may submit a claim and receive compensation on a no-fault basis. The claimant has the option of accepting the decision of the district court regarding the claim or, in the alternative, filing a civil action in a state or federal court. 42 U.S.C. § 300aa–11.

The statute also gives the injured party who has a civil action for damages pending at the time of the effective date of the Act the option of withdrawing their suit and filing a petition under the Act. *Id.* This subsection indicates that civil actions were contemplated by Congress. Finally, the statute states that no *state* may prevent an individual from bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury if such civil action is not barred by the Act. 42 U.S.C. § 300aa–22.

■ The legislative history surrounding the passage of the National Vaccine Act also indicates that Congress envisioned civil actions for vaccine-related injuries. The House Report relates that the new fund will replace the old system:

Vaccine-injured persons will now have an appealing alternative to the tort system. Accordingly, if they cannot demonstrate under applicable law either that a vaccine was improperly prepared or that it was accompanied by improper directions or inadequate warnings should pursue recompense in the compensation system, not the tort system.

1986 U.S.Code Cong. & Admin.News at 6287, 6367. The Report goes on to present the idea that the compliance with FDA regulations is to be some evidence of due care. In order to give some protection to vaccine manufacturers there is a presumption of no liability if the regulations are met:

In establishing this presumption, the Committee intends to make clear its view that only those significant failures to warn or provide directions that clearly pertain to vaccine safety and that clearly arise from substantial wrongdoing on the part of the manufacturer ought to result in liability.

*Id.* The House language is reflected in § 300aa–22 which creates a presumption that the FDA regulations act as the standard of care for civil suits. Despite compliance with FDA regulations, however, a manufacturer can still be found liable if it engaged in fraud, intentional withholding of information, or failure to exercise due care. In summary, compliance with FDA regulations is evidence of due care but it is not controlling.

Although the Supreme Court has long been reluctant to look to congressional intent to interpret a statute passed in previous terms of the Congress (*Russello v. U.S.,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)), the Court has never conclusively negated the practice. The Court has implied that congressional intent at a later time might be controlling over previous *regulations* issued by an administrative agency. *Rainwater v. U.S.,* 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996 (1957). Considering the fact that the FDA regulations have never expressly foreclosed civil tort actions using state law, the statements of Congress in the House Report and the language of the Vaccine Act itself are strong

evidence that there is an intent to preserve the state suit for vaccine-related injuries.

The court in *Wack v. Lederle*, 666 F.Supp. 123, 127 n. 1 (N.D.Ohio 1987) points out that the Vaccine Act will only become effective when a special compensation tax is passed. The *Wack* court notes the tax has not yet been passed and concludes that this fact dilutes anti-preemption arguments based on the Act. This court finds the tax issue to be irrelevant to the intent of Congress regarding the maintenance of state suits. On the contrary, if the tax to fund the Act is not passed, the argument for the maintenance of a state suit system of compensation is even stronger because victims would have no available route to pursue compensation. Congress could not have intended this outcome. This further undermines the preemption argument.

In summary, the intent that is evident in the Vaccine Act requires that this court acknowledge the existence of state law remedies for vaccine-related injuries. While the Act provides that compliance with FDA regulations is a presumption of due care, this court cannot grant summary judgment to the defendant on the plaintiff's negligence claims. Issues of due care despite the adherence to the regulations are still present, and suits on that basis are provided for in the Act. 42 U.S.C. 300aa–22.

In passing, the court notes that one premise on which the defendant bases the standard of care argument is false. Lederle argues that since the whole cell vaccine was the only vaccine that was approved by the FDA, its compliance with the regulations is evidence of due care. To support this proposition, Lederle cites *Toner for Toner v. Lederle Laboratories*, 779 F.2d 1429 (9th Cir.1986) as saying that no split-cell vaccine could be produced because it would have been a criminal offense. A representative of Eli Lilly Corporation, however, submitted a letter to the Superior Court of New Jersey regarding the recently decided case *Shackil v. Lederle Laboratories*, 219 N.J.Super. 601, 530 A.2d 1287 (1987). The letter discloses that the FDA, in fact, did not determine that the production of a split-cell vaccine would be unsafe or a crime. Eli Lilly had voluntarily requested that their license to produce the split-celled vaccine be withdrawn without prejudice. Accordingly, the whole cell vaccine was not the only available vaccine for production.

For the foregoing reasons, defendant's motion for summary judgment on grounds of preemption and compliance with the requisite standard of care is DENIED.

The court hereby finds that the ruling on the preemption issue involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation. Accordingly, pursuant to 28 U.S.C. § 1292(b), this court certifies the ruling for immediate appeal.

## II. *Warranty Claims*

### A. *The Warranty of Merchantability*

■ North Carolina law, G.S. 25–2–314, provides for an implied warranty of merchantability. Plaintiffs' claim that this warranty existed and was breached is a subject of defendant's motion for summary judgment. The court finds that there are substantial matters of material fact that are at issue involving this claim. A claim of breach of implied warranty of merchantability is a factually specific claim, and the evidence at this time indicates several factual matters to be in issue. *Reid v. Eckerds Drugs*, 40 N.C.App. 476, 253 S.E.2d 344 (1979).

The *Reid* court listed five elements that must be proved in order for a recovery under G.S. 25–2–314:

(1) A merchant sold goods,

(2) The goods were not "merchantable" at the time of sale,

(3) The plaintiff was injured by such goods,

(4) The defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and

(5) The plaintiff so injured gave timely notice to the seller.

40 N.C.App. at 480, 253 S.E.2d 344. An inquiry into factor 2, whether the goods were "merchantable" at the time of sale, necessarily implicates a particular standard of care. The *Reid* court goes on to hold, consistent with this court's holding in this order, that compliance with federal standards is some but not conclusive evidence of due care. Accordingly, Lederle's compliance with FDA standards does not dictate a *per se* finding that the DPT vaccine was "merchantable" at the time of sale.

Defendant's motion for summary judgment on plaintiffs' claim of breach of implied warranty of merchantability is DENIED.

### B. The Implied Warranty of Fitness for a Particular Purpose

■ North Carolina law provides for recovery for a breach of the implied warranty of fitness for a particular purpose. G.S. 25–2–315. This warranty, however, is different than the implied warranty of merchantability. Official comment 2 to G.S. 25–2–315 states:

A 'particular purpose' differs from an ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses customarily made of the goods in question.

In the present case the DPT vaccine had the ordinary purpose of preventing the contraction of disease. There was no particular purpose, native to the plaintiff's position, that would implicate the implied warranty for a particular purpose.

Defendant's motion for summary judgment on the claim of breach of implied warranty for a particular purpose is GRANTED.

### III. Strict Liability Causes of Action

■ Plaintiffs' complaint states a cause of action based on Lederle's manufacture and sale of an unreasonably dangerous product. This action in strict liability cannot withstand scrutiny under North Carolina law. There is no provision in North Carolina that tracks the language of the Restatement of Torts § 402A as there is in other states. Case law unequivocally holds that there is no action for strict liability in product liability cases in North Carolina. *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 678, 268 S.E.2d 504, 510 (1980).

Defendant's motion for summary judgment on the strict liability claims is hereby GRANTED.

### IV. Defendant's Failure to Warn

Plaintiffs' first and third causes of action contain allegations that they have suffered damages as a direct result of the defendant's failure to warn them about the dangers of the vaccine Tri–Immunol. It is uncontested that defendant did not warn plaintiffs of the danger involved in a DPT vaccination.

There is uncontradicted evidence, however, that the administering physician was warned. The physician was aware of and understood the warnings and instructions included with the Tri–Immunol. These warnings and instructions complied with the relevant FDA requirements.

■ Although it would be inappropriate to grant summary judgment for allegations of failure to warn a physician (*Ziglar v. DuPont Co.*, 53 N.C.App. 147, 280 S.E.2d 510 (1981); *Davis v. Siloo*, 47 N.C.App. 237, 267 S.E.2d 354 (1980)), the North Carolina courts have not yet addressed an allegation that the failure to warn a patient was actionable. The overwhelming weight of the law in other jurisdictions is to absolve the manufacturer from a requirement to warn the patient when there has been a warning to the treating physician. *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir.1974) (Texas); *Hoffman v. Sterling Drug Inc.*, 485 F.2d 132, 142 (3rd Cir.1973) (Pennsylvania); *Ortho Pharmaceutical Corp. v. Chapman*, 180 Ind.App. 33, 388 N.E.2d 541 (1979); *Magee v. Wyeth*, 214 Cal.App.2d 340, 29 Cal.Rptr. 322 (1963);

**536**

*Terhune v. A.H. Robins*, 90 Wash.2d 9, 577 P.2d 975 (1978).

Some indication of North Carolina's inclination in this area is provided by *Holley v. Burroughs Welcome Co.*, 74 N.C.App. 736, 330 S.E.2d 228 (1985) *aff'd.*, 318 N.C. 352, 348 S.E.2d 772 (1986). In *Burroughs* the court cited *Reyes* with approval to support the proposition that warnings are only required to be given to the party responsible for the patient's care. In this case the court ruled that warnings must be given to trained anesthetists, as well as administering doctors. Implicit in this ruling is the assumption that when prescription drugs are used, the manufacturer's duty to warn does not extend to the patient. The doctor is responsible for gathering the information, weighing the dangers and benefits, and making a decision in the best interest of the patient. This analysis supports the "learned intermediary" doctrine although the issue was not squarely before the court in *Burroughs*.

This "learned intermediary" doctrine requires that defendant's motion for summary judgment on the claim of failure to warn be GRANTED.

### V. *Emotional Distress*

■ Plaintiffs further claim that they have suffered actual damages as a result of the mental anguish and suffering after seeing their daughter suffer this injury. Again, North Carolina law is used to dispose of this claim.

Claims for emotional harm have been recognized in some areas of North Carolina law. The cause of action for the mental suffering resulting from the death or injury to a loved one, however, has not been recognized. *Michigan Sanitarium v. Neal*, 194 N.C. 401, 139 S.E. 841 (1927); *Croom v. Murphy*, 179 N.C. 393, 102 S.E. 706 (1920).

Absent a directive from the courts of North Carolina, this court is unable to justify an extension of the emotional distress claim in the present case.

For the foregoing reasons, the defendant's motion for summary judgment on plaintiffs' claim of emotional distress is hereby GRANTED.

### CONCLUSION

In accordance with the foregoing analysis, the defendant's motion for summary judgment is GRANTED in part and DENIED in part.