Heather MacGILLIVRAY, an infant, Lynnette MacGillivray, individually and as mother and next friend of Heather MacGillivray, and Walter C. MacGillivray, individually and as father and next friend of Heather MacGillivray, Plaintiffs,

v.

LEDERLE LABORATORIES DIVISION, AMERICAN CYANIMID COMPANY, a foreign corporation, Defendant.

Civ. No. 85–0422–JB.

United States District Court,
D. New Mexico.

Feb. 5, 1987.

Rodey, Dickason, Sloan, Akin & Robb, Bruce Hall, Albuquerque, N.M., for plaintiffs.

Montgomery & Andrews, Deborah J. Van Vleck, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS MATTER comes before the Court on Defendant's motion for partial summary judgment. The Court, having reviewed the pleadings, the evidence of record and the relevant law, finds that the motion is not well taken and should be denied.

The question before the Court is a narrow one: whether certain provisions of federal law preempt a state common law products liability claim for defective design of a pertussis vaccine manufactured by Defendant.

Plaintiffs bring suit against Defendant for damages allegedly caused by administration of diphtheria, tetanus and pertussis vaccine ["DPT"], a prescription biological product manufactured by Defendant Lederle, to Plaintiff Heather MacGillivray, who at the time of the injection was approximately two months of age. Defendant moves for partial summary judgment on one aspect of Plaintiffs' claim sounding in strict tort liability, namely that of defective design. Defendant argues that, as a biological product, the pertussis vaccine is regulated pursuant to 42 U.S.C. § 215 *et seq.*, the Public Health Service Act, and 21 U.S.C. § 301 *et seq.*, the Federal Food, Drug and Cosmetic Act, and the regulations promulgated thereunder. Therefore, Defendant reasons that federal law serves to preempt Plaintiffs' claim of strict liability for defective design.

Plaintiffs contend that the DPT vaccine marketed under the product name Tri-Immunol "was manufactured and formulated under a plan or design which makes it dangerous for the uses for which it was manufactured," and it "was insufficiently tested for the risk of injury sustained by Heather MacGillivray...." Complaint, Count I, ¶¶ 3, 4. The vaccine under scrutiny is a "whole cell" vaccine, the only type of vaccine currently licensed for manufacture and distribution in the United States. The mechanism of the whole-cell vaccine and the industry's attempts to develop alternative vaccines are discussed in *Tover v. Lederle Laboratories*, 779 F.2d 1429 (9th Cir.1986). At one time a split-cell vaccine was marketed by Eli Lilly Company and was found to have fewer toxic side effects than the whole-cell vaccine. When Lilly stopped producing this vaccine, the Food and Drug Administration ["FDA"] refused to relicense that vaccine to allow manufacture by another laboratory. A third type of vaccine known as an acellular vaccine is currently in use in Japan but not licensed

for use in this country. It is also undisputed that the State of New Mexico requires vaccination of children prior to school attendance. *See* § 24–5–1 NMSA 1978.

In brief, Defendant contends that "the FDA is specifically delegated with plenary authority and the expertise to determine whether a biological vaccine is sufficiently safe and effective for use within the United States." Therefore, Defendant argues, "it would be improper for a lay jury to decide on issues delegated to the expertise and regulation of a federal agency." [Thus], "Plaintiffs' claims alleging alternative, unapproved drug designs are preempted by federal law."

Accompanying Defendant's motion are approximately 140 pages of federal regulations, specifically 21 C.F.R. §§ 211, 312, 600, 601, 610 and 620, passed under the authority of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and the Public Health Service Act, 42 U.S.C. § 215 *et seq.* Defendant seemingly seeks to show the extensiveness of federal regulation regarding the licensing, manufacturing and distribution of prescription drugs and biological products. Defendant, however, points to no express language preempting state law products liability claims for defective design. Rather, Defendant bases its preemption argument on the doctrine of implied preemption. Specifically, Defendant asserts that where there is congressional intent to occupy a field and where state law would interfere with the accomplishment of the full purposes and objectives of the federal law, the conflicting state law is preempted by the Supremacy Clause of the Constitution, Article VI.

Preemption of state law may be express or may arise by implication. In both instances, the Court must determine that Congress either expressly or impliedly intended to preempt state law. Where express intent is lacking, there is a strong presumption that Congress did not intend to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67

S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). This presumption may be overcome in narrow instances when an act of Congress touches a field in which the federal interest is dominant and the scheme of federal regulations is so pervasive that it is reasonable to infer congressional intent to preempt. *Fidelity Federal Savings & Loan Association v. De la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Alternatively, to the extent state law actually conflicts with federal law, making compliance with both federal and state regulation impossible and the state law stands as an obstacle to the accomplishment of congressional purposes, a preemption by implication has been found. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

■ Defendant does not contend that there is express language that would preempt the claim asserted here. Defendant relies instead on implied preemption with reference to the pervasiveness of federal regulations in the area of drug marketing and design. However, comprehensiveness of federal regulations alone does not provide a basis for inferring intent to preempt. As recently articulated by the Supreme Court, "We are even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes. As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive." *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 717, 105 S.Ct. 2371, 2377, 85 L.Ed.2d 714 (June 4, 1985). Furthermore, because federal agencies have the capacity to address problems in a detailed and comprehensive matter, it is not unreasonable to expect that if they intended their regulations to preempt state law, the agency would so state. *Id.* at 717, 718, 105 S.Ct. at 2377.

■ When the focus of the preemption inquiry is on a field which is traditionally defined by state law, further hesitation in concluding intent to preempt is warranted. It would be rare indeed to infer an intent to supersede tort actions involving rights and remedies traditionally defined exclusively by state law. The availability of tort remedies to compensate for personal injuries is a subject matter "traditionally regarded as properly within the scope of state superintendence." *Florida Lime & Avocado Growers,* 373 U.S. at 144, 83 S.Ct. at 1218. While courts have recognized that in some rare instances state common law may be preempted by implication, this Court sees no reason to do so here. The state tort law at issue here is remedial and compensatory in nature; its purpose is not regulatory and does not directly conflict with any aspect of the federal regulatory scheme. New Mexico tort law does not attempt in any way to create its own scheme to regulate drug manufacturing and distribution.

Nor would a state law damage claim necessarily frustrate the federal objectives behind the federal laws at issue here. The federal regulations are designed to assure the manufacture and distribution of effective, safe pharmaceutical products for the consumer. A tort judgment against a drug manufacturer may in fact accelerate the development of better, safer products. Public policy militates against finding as a matter of law that FDA approval of a particular drug product relieves a pharmaceutical company of further responsibility to continue research and testing to develop safer products.

Furthermore, in order to find congressional intent to preempt state tort remedies, it would be necessary for this Court to find that one purpose of the federal regulations was to exempt manufacturers from state law tort liability. The Court declines to find such an intention implicit in a regulatory scheme governing manufacture and distribution of biological products. A state may decide that while it must abide by the FDA's determination that a drug is marketable, the manufacturer must nonetheless

bear the expense of the risk of injuries, particularly where there is evidence that suggests that the product may be subject to improvement. Imposing a burden on the sale in the form of potential liability for defective design is distinguishable from a state seeking to exert actual control over the mode of manufacture or distribution of a specific product. *See Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1541 (D.C. Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984).

Statutes and regulations of federal agencies, while setting minimum standards, are not necessarily dispositive of whether or not a product is "defective" under state products liability law. *See Michael v. Warner/Chilcott*, 91 N.M. 651, 654, 579 P.2d 183 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978) (holding that federal regulations regarding warnings on drug products, while admissible as evidence, did not change the common-law duty to warn). *See also Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652 (1st Cir.1981) (claim of design defect inherent in high estrogen birth control pill states cause of action for strict liability where same defendant marketed safer and highly effective pill). Furthermore, "federal legislation has traditionally occupied a limited role as the *floor* of safe conduct; before transforming such legislation into a *ceiling* on the ability of states to protect their citizens, and thereby radically adjusting the historic federal-state balance, courts should wait for a clear statement of congressional intent to work such an alteration." *Ferebee*, 736 F.2d at 1543.[1] In fact, protection of users lies at the center of both federal and state law.

There is no irreconcilable conflict between federal and state standards or a frustration of federal objectives. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 256, 104 S.Ct. 615, 626, 78 L.Ed.2d 443 (1984). The Court thus declines to find that state law for defective design is preempted by federal law.[2] *See Silkwood*, 464 U.S. at 238, 104 S.Ct. 615 (federal preemption of safety aspects of nuclear energy does not extend to state-authorized award of punitive damages for conduct related to radiation hazards); *Ferebee*, 736 F.2d at 1529 (fact that EPA has determined that label on paraquat is adequate for purposes of the Federal Insecticide, Fungicide & Rodenticide Act does not compel a jury to find that the label is adequate for purposes of state tort law); *Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374 (1984) (FDA regulations do not preempt products liability claim for failure to warn of side effects of tetracycline).

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that Defendant's motion for summary judgment on the defective design claim be, and the same hereby is, denied.

---

1. In this regard, Congress has quite recently chosen to address the important legal and public health issues raised by suits against vaccine manufacturers wherein certain aspects of state tort law are in fact preempted. Title III of Public Law 99–660, known as the "National Childhood Vaccine Injury Act," was signed into law on November 14, 1986. However, the relevant portions of the Act do not become effective until funds are made available. *See* Pub.L. 99–660, § 323. This Act may indeed serve to prevent future injured parties from bringing state claims based on defective design. *See* Pub.L. 99–660, House R. No. 908, 99th Cong., 2d Sess. 25–26, *reprinted in* 1987 U.S.Code Cong. & Admin.News 6344, 6366–67. A plaintiff having a

pending action, however, will not be governed by the Act unless he or she voluntarily chooses to submit himself or herself to its provisions. Therefore, the Court need not consider the provisions of this Act as applied to this Plaintiff, except to note that the Act, by preempting certain kinds of claims, suggests that such claims were available prior to the implementation of the Act.

2. The Court is aware of a recent district court opinion holding to the contrary. *See Hurley v. Lederle Laboratories*, 651 F.Supp. 993 (E.D.Tex. 1986). This Court declines to follow that holding.