**Linda WACK, etc., et al., Plaintiffs,**

v.

**LEDERLE LABORATORIES, etc., et al., Defendants.**

**No. C84–2820A.**

United States District Court,
N.D. Ohio, E.D.

Aug. 4, 1987.

Timothy F. Scanlon, Mark Hilbert, Akron, Ohio, for plaintiffs.

Michael R. Gallagher, Virginia L. Reichard, Cleveland, Ohio, John J. Siciliano, Robert A. Bunda, Fuller & Henry, Toledo, Ohio, for defendants.

## ORDER OVERRULING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

KRENZLER, District Judge.

The plaintiffs, John and Linda Wack, individually, and Linda Wack, as mother and natural guardian of Paul Wack, a minor, commenced the instant suit in the Common Pleas Court of Summit County, Ohio, on August 9, 1984 against Lederle Laboratories ("Lederle"). Subsequently, Lederle removed this case to federal court. On October 23, 1985, the plaintiffs filed an amended complaint, naming Connaught Laboratories, Inc. ("Connaught") as an additional defendant. In their amended complaint, the plaintiffs seek compensatory and punitive damages for injuries and damages allegedly sustained as the result of the administration of a diphtheria and tetanus toxoids and pertussis vaccine adsorbed ("DPT") manufactured, sold and/or distributed by the defendants to Paul Wack on July 31 and October 4, 1980.

Pending before the Court are various motions for partial summary judgment, filed by the defendants, pursuant to Fed.R. Civ.P. 56. In one group of motions, the defendants contend that the plaintiffs' fifth cause of action, for loss of consortium and medical expenses, is barred by the applicable statute of limitations. In the second

group of motions, the defendants move this Court for partial summary judgment on the plaintiffs' design defect, inadequate warnings and punitive damages claims. Both the plaintiffs and the defendants have fully briefed their positions. For the reasons provided below, the Court overrules the defendants' motions for partial summary judgment.

Under Rule 56, summary judgment is rendered for the movant only if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, "the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). "The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently." *Watkins v. Northwestern Ohio Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

### I.

A review of the pleadings reveals the following facts. On or about July 31, 1980, the plaintiff, Linda Wack, took her four-month-old son, Paul, to Pediatrics of Akron, Inc., for a DPT immunization. Paul Wack was given a DPT immunization allegedly manufactured, sold and distributed either by Lederle or Connaught. Within eight (8) hours of the administration of the DPT vaccine, Paul Wack experienced a seizure.

Subsequently, on or about October 4, 1980, Linda Wack took her son, Paul, to Pediatrics of Akron, Inc. for a DT immunization allegedly manufactured, sold and distributed by Lederle. Within twenty-four hours after the administration of the DT vaccine, Paul Wack experienced another seizure. Since that date, Paul Wack has continued to experience such seizures.

In their amended complaint, the plaintiffs have asserted claims based on defective design and manufacturing, negligence, and inadequate warnings. Amended Complaint, Counts I and II. They further contend that the defendants acted "with reckless indifference and wanton disregard to the safety of plaintiffs," and thus seek punitive damages. Amended Complaint, Counts III and IV. Finally, the plaintiffs claim, as their fifth cause of action, that "[a]s a direct and proximate result of the conduct of the defendants, plaintiffs have suffered the loss of the care, services and consortium of Paul Wack, and have incurred and will continue to incur medical expenses in his care and treatment." Amended Complaint, Count V.

### II.

In their first group of motions, the defendants contend that the plaintiffs' fifth cause of action is barred by the applicable four-year statute of limitations, as set forth in Ohio Rev.Code Ann. § 2305.09(D). The defendants argue that the plaintiffs' cause of action for loss of services and medical expenses for their minor son arose on or about July 31, 1980, when the first DPT immunization was administered to Paul Wack. Since the plaintiffs did not commence the instant suit until August 9, 1984 against Lederle and October 23, 1985 against Connaught, the defendants assert the plaintiffs' fifth cause of action is time-barred.

In their opposition briefs, the plaintiffs contend that the defendants are not entitled to partial summary judgment on their fifth cause of action for two reasons. First, the plaintiffs assert that genuine issues as to material facts exist concerning when their fifth cause of action accrued against both defendants. Second, the plaintiffs argue that the Ohio saving clause provision, Ohio Rev.Code Ann. § 2305.15, tolled the running of the applicable statute of limitations against defendant Connaught.

Upon consideration, the Court overrules the defendants' motions for partial summary judgment on the plaintiffs' fifth cause of action. The Ohio Supreme Court has established a discovery rule in products liability cases for determining when the

cause of action arises. *See O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727 (1983). A review of the pleadings and evidence submitted reveals that genuine issues as to material facts exist concerning when the plaintiffs' fifth cause of action accrued. Thus, the granting of partial summary judgment on the plaintiffs' fifth cause of action would be inappropriate, pursuant to Rule 56(c).

■ Furthermore, the Court concurs with the plaintiffs' position that the Ohio saving clause provision, Ohio Rev.Code Ann. § 2305.15, applies in this case to toll the running of the four-year limitations period against defendant Connaught. *See Seeley v. Expert, Inc.*, 26 Ohio St.2d 61, 269 N.E.2d 121 (1971); *Mead Corp. v. Allendale Mutual Insurance Co.*, 465 F.Supp. 355 (N.D.Ohio 1979). Section 2305.15 states, in pertinent part:

When a cause of action accrues against a person, *if he is out of state,* or has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, inclusive, and sections 1302.98 and 1304.29 of the Revised Code, does not begin to run until he comes into the state or while he is so absconded or concealed.

*Id.* (emphasis added). The fact that the out-of-state defendant is amenable to long-arm service, as was the defendant Connaught in this case, does not foreclose the application of this statute. *Seeley,* 26 Ohio St.2d 61, 269 N.E.2d 121 (1971) (Syllabus 2 and 3).

As the Certificate of No Record from the Ohio Secretary of State (attached to the plaintiffs' opposition brief) demonstrates, defendant Connaught is not registered with the State of Ohio and has no statutory agent in this state. Accordingly, Connaught is deemed to be "out of state" and the applicable statute of limitations is tolled. The plaintiffs' fifth cause of action was timely filed against Connaught.

### III.

■ In their second group of motions, the defendants move this Court for partial summary judgment on the plaintiffs' design defect, inadequate warnings and punitive damages claims. The basis of their motions for partial summary judgment is the doctrine of federal preemption, pursuant to the Supremacy Clause of the United States Constitution, Article VI, Clause 2. The plaintiffs have filed briefs in opposition to the defendants' motions for partial summary judgment, contending that the doctrine of federal preemption is not applicable in this case. For the following reasons, the Court concurs with the plaintiffs' position and overrules the defendants' motions for partial summary judgment on the plaintiffs' design defect, inadequate warnings and punitive damages claims.

The doctrine of federal preemption is predicated upon the Supremacy Clause of the United States Constitution, which states:

The Constitution and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the laws of any state to the contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

Federal preemption may be either expressed or implied. *Silkwood v. Kerr-McGee,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). If Congress expressly evidences an intent to occupy a given field, any state law falling within that field is preempted. *Id.; Pacific Gas & Co. v. State Energy Resources Conservation & Development Comm'n,* 461 U.S. 190, 203–204, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). Even if Congress has not expressly evidenced an intent to occupy the field, the doctrine of implied preemption may apply: state law is still preempted to the extent it actually conflicts with federal law, or where the state law prevents the accomplishment of the goals of Congress. *Silkwood,* 464 U.S. at 248, 104 S.Ct. at 621.

The Food and Drug Administration (the "FDA") regulates the licensing, testing, production, distribution, review and approval of all DPT vaccines, pursuant to provi-

sions of the Public Health Service Act ("PHSA"), 42 U.S.C. §§ 215 *et seq.*, the Federal Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and the rules and regulations promulgated thereunder. In the instant case, the defendants do not contend that Congress has expressly preempted state law by language in the FDCA or PHSA. Instead, they assert that the comprehensiveness of the statutes and regulations in this field, the federal interest in promoting uniformity in the design and labelling of DPT, and the alleged irreconcilable conflicts a state law determination would have on federal policies as to the labelling and design of DPT, require this Court to find implied preemption applies.

This Court is reluctant to hold implied preemption applies to the plaintiffs' design defect, inadequate warnings and punitive damages claims for several reasons. First, federal preemption should only be implied in very limited circumstances, or the courts will run the risk of infringing upon the powers of Congress. National policy is made by the Congress of the United States regarding legislative matters. Federal regulation of vaccines began with the passage by Congress of the Virus, Serum, Toxin Act of 1902, 42 U.S.C. §§ 141–148, which vested control over biological products used in interstate commerce with the research branch of the United States Public Health Service (later known as the National Institute of Health). *See* Esben, Meyer, Petriccioni & Meyer, *The Role of the Food and Drug Administration in the Regulation of Biological Products,* reprinted in Proceedings of the 19th Immunization Conference, May 23 and 24, 1984 (attached to defendant Lederle's brief in support of its motion for partial summary judgment as Exhibit H). Since 1902, Congress has had ample opportunity to expressly state that federal law preempts state law in this field if it so desired, but it has not done so.[1]

Because Congress has not expressly stated whether federal law preempts state law concerning the labelling and design of DPT, the courts have had to struggle with the preemption issue in this field. Indeed, this situation has resulted in courts falling on both sides of the issue. *See, e.g., Abbott v. American Cyanamid Co.,* C.A. No. 86–857–A (E.D.Va. March 9, 1987); *Hurley v. Lederle Laboratories,* 651 F.Supp. 993 (E.D.Texas 1986); *Morris v. Parke-Davis and Co.,* No. CV82–5296–RJK (C.D.Cal. Sept. 19, 1985) [Available on WESTLAW, DCT database] (holding in favor of federal preemption). *See also, e.g., Patten v. Lederle Laboratories,* 655 F.Supp. 745 (D. Utah 1987); *MacGillivray v. Lederle Laboratories,* 667 F.Supp. 743 (D.N.Mex.1987) (allowing state tort remedies).

There is only one way to ensure uniform decisions concerning the preemption issue in this field: Congress should be held to a higher standard and forced to expressly state whether federal preemption applies. Courts should not be required to grapple with the doctrine of implied preemption. For example, in the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1391 *et seq.*, Congress had no trouble using preemption language. That Act specifically provides that once a federal motor vehicle safety standard is established, "no State ... shall have any authority either to establish, or to continue in effect, ... any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal Standard." 15 U.S.C. § 1392(d). If Congress intends for federal law to preempt state law concerning the labelling and design of DPT, it should expressly state this intention.

The Court is also reluctant to hold implied preemption applies to the plaintiffs' design defect, inadequate warnings and pu-

1. The Court notes that on November 14, 1986, Congress enacted the National Childhood Vaccine Injury Act of 1986, which added a new title to the PHSA. Act of November 14, 1986, Pub.L. No. 99–660. At least one court has held that the legislative history of this Act, and the structure of the Act itself, demonstrate that Congress has not preempted state tort remedies for vaccine-related injuries. *See Patten v. Lederle Laboratories,* 655 F.Supp. 745 (D.Utah 1987). However, this Act shall only take effect on the effective date of a tax enacted to provide funds for compensation paid under the Act. To date, no such tax has been enacted.

nitive damage claims because such action would effectively deprive the plaintiffs of any civil remedy. First, Congress has not provided any federal remedies for collecting damages for inadequate labelling and design defects in DPT products liability cases.[2] Second, the plaintiffs' remaining claims based on negligent or defective manufacturing are nearly impossible to prove—a drug is inherently consumed in its use and is no longer available for analysis to determine whether it was properly manufactured.

In *Silkwood*, the Supreme Court commented on the significance of Congress' failure to provide alternative remedies. The Supreme Court held that a state-authorized award of punitive damages, arising out of the escape of plutonium from a nuclear facility, was not preempted by federal law:

> Indeed, there is no indication that Congress even seriously considered precluding the use of such remedies either when it enacted the Atomic Energy Act in 1954 or when it amended it in 1959. This silence takes on added significance in light of Congress' failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct. *See Construction Workers v. Laburnum Corp.*, 347 U.S. 656, 663–664, 98 L.Ed. 1025, 74 S.Ct. 833 (1954).

464 U.S. at 251, 104 S.Ct. at 623.

Similarly, in *Construction Workers v. Laburnum Corp.*, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954), the Supreme Court held that to the extent that Congress had not prescribed procedures for dealing with the consequences of tortious conduct already committed, there was no ground for concluding that the existing state liabilities for tortious conduct had been eliminated:

> Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the respondent from this right of recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct.

*Id.* at 663–64, 74 S.Ct. at 837.

As mentioned above, Congress has not specifically addressed the issue of preemption in the PHSA or FDCA. This silence "takes on added significance in light of Congress' failure to provide any federal remedy" for persons injured as a result of design defects or inadequate labelling. *Silkwood*, 464 U.S. at 251, 104 S.Ct. at 623. For this Court to deprive the plaintiffs of these theories of recovery would, in effect, grant defendants immunity from liability for their alleged tortious conduct. *See Construction Workers*, 347 U.S. at 663–64, 74 S.Ct. at 837.

Accordingly, the Court overrules the defendants' motions for partial summary judgment on the plaintiffs' design defect, inadequate warnings and punitive damages claims.

### IV.

For the reasons provided above, the Court overrules the defendants' motions for partial summary judgment on plaintiffs' fifth cause of action. The Court further overrules the defendants' motions for partial summary judgment on plaintiffs' design defect, inadequate warnings and punitive damages claims.

IT IS SO ORDERED.

---

**2.** While the National Childhood Vaccine Injury Act of 1986 provides for a "no-fault" compensation scheme for individuals injured by a childhood vaccine, this Act shall only become effective when a tax is enacted to provide funds for compensation paid under the Act. *See* footnote 1, *supra*. No such tax has yet been enacted, and given Congress' recent budgetary restraints, the likelihood that such a tax will be enacted is slight.