Joshua MARTINKOVIC, a minor, by his mother and natural guardian, Deborrah MARTINKOVIC; Deborrah Martinkovic, individually, and Valentine Martinkovic, Plaintiffs,

v.

WYETH LABORATORIES, INC., Defendant.

No. 84 C 9568.

United States District Court, N.D. Illinois, E.D.

Aug. 31, 1987.

Thomas G. Wilson, Hunt & Wilson, Charleston, W.Va., Barbara Ziegler Ashley,

Larson & Lambert, Wayzata, Minn., for plaintiffs.

Peter A. Tomaras, Richard C. Bartelt, Richard C. Palmer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Hedy M. Powell, Wyeth Laboratories, Inc., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Defendant Wyeth Laboratories, Inc. manufactures a diphtheria and tetanus toxoids and pertussis vaccine adsorbed [DTP vaccine] with which plaintiff Joshua Martinkovic was inoculated three times as an infant. Joshua allegedly suffers from a seizure disorder and other permanent, disabling injuries, which he and his parents, plaintiffs Deborrah and Valentine Martinkovic, allege were caused by the vaccine's pertussis component. In this diversity action, plaintiffs seek compensatory and punitive damages from Wyeth under Illinois tort laws of intentional misrepresentation, strict liability, absolute liability, breach of warranty, and negligence in warnings, design, and handling of the vaccine.

Wyeth moves for summary judgment, arguing first that federal regulations preempt Illinois from providing tort remedies to persons injured by the DTP vaccine. In the alternative, Wyeth contends that plaintiffs have failed to show that a genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

■ First we consider the effect on state tort claims of the Public Health Service Act, 42 U.S.C. §§ 262 *et seq.* (1982), the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (1982), and ensuing regulations promulgated by the Food and Drug and Administration [FDA]. Where Congress explicitly states its intent that a federal act will supplant state laws, either in the act or in legislative history, preemption occurs. *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *see* U.S. Const. art. VI, cl. 2. Furthermore, courts will infer pre-

emption upon a showing that: (1) Congress intended to occupy the field, as evidenced by the pervasiveness of the federal regulatory scheme, by a dominant federal interest, or by the means established to effect the federal objective; or (2) state laws actually conflict with federal law or impair achievement of the federal objective. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Fidelity Federal*, 458 U.S. at 153, 102 S.Ct. at 3022. In areas traditionally regulated by the states, such as health and safety, there is a presumption against preemption absent clear evidence of contrary congressional intent. *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 206, 103 S.Ct. 1713, 1723, 75 L.Ed.2d 752 (1983) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); *accord Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 718, 105 S.Ct. 2371, 2377–78, 85 L.Ed.2d 714 (1985).

Of the handful of federal district courts that have considered whether FDA regulations preempt suits for injuries from pertussis vaccination, two have found preemption. *Abbott v. American Cyanamid Co.*, No. 86–857–A, mem. op. (E.D.Va. Mar. 9, 1987); *Hurley v. Lederle Laboratories*, 651 F.Supp. 993 (E.D.Tex.1986). In *Hurley*, the court acknowledged that there is no explicit evidence of congressional intent on the preemption issue. *Hurley*, 651 F.Supp. at 998, 1003. It stated, however, that because the comprehensive regulations arose from the FDA's specific balancing of the risk of injury against the benefits from vaccination, a state court could not find that the DTP vaccine was labeled inadequately or designed or produced defectively. *Id.* at 999–1001, 1003–06. Such a verdict would constitute an actual conflict with the federal plan to prevent disease through uniform vaccination procedures. *Id.* at 1004–05. *See Abbott, supra*, at 3–9 (similar analysis and conclusion).

■ Diluting *Hurley's* strength, however, is the National Childhood Vaccine In-

jury Act of 1986, 42 U.S.C. §§ 300aa–1 to 300aa–28 (1987 West supp.). The act will not take effect until Congress enacts a special tax. *Wack v. Lederle Laboratories*, 666 F.Supp. 123 (N.D.Ohio 1987) (available on Lexis). Nonetheless, its passage suggests that Congress does not intend FDA regulations to preempt tort remedies. The House Committee on Energy and Commerce, for example, clearly assumed tort remedies were available before the act was passed: "Currently," it wrote, "vaccine-injured persons can seek recovery for their damages only through the civil tort system or through a settlement arrangement with the vaccine manufacturer." 1986 U.S.Code Cong. & Admin.News 6287 at 6347. Furthermore, although the act's victim compensation program will limit recovery from manufacturers on some tort theories, the act assumes civil plaintiffs will continue to seek relief under tort theories it does not proscribe. 42 U.S.C. § 300aa–22; *see Morris v. Parke-Davis & Co.*, 667 F.Supp. 1332, 1339–40 (C.D.Cal. 1987). Given that the vaccine act itself will not occupy the field of regulation of the pertussis vaccine, it is clear that the FDA's current regulations, though comprehensive, do not establish such an occupation. *Cf. Hillsborough*, 471 U.S. at 718, 105 S.Ct. at 2377 (in permitting ordinances restricting blood plasma donation, Court writes it "will seldom infer, solely from the comprehensiveness of federal regulations, an intent to pre-empt in its entirety a field related to health and safety").

Furthermore, the vaccine act's compensation provisions demonstrate that the federal policy of preventing disease through vaccination "is not to be achieved at all costs." *Patten v. Lederle*, 655 F.Supp. 745, 750 (D.Utah 1987). *Cf. Pacific Gas & Electric*, 461 U.S. at 220–23, 103 S.Ct. at 1730–32 (stating that federal goal of nuclear power is not to be won at all costs, Court permits California to regulate nuclear power for economic reasons). Illinois, even while requiring immunization against communicable diseases, Ill.Rev.Stat. ch. 122, ¶ 27–8.1, ch. 111½, ¶ 22.11–.12 (1985), permits persons injured by vaccines to recover tort

damages from manufacturers. *See Malek v. Lederle Laboratories*, 125 Ill.App.3d 870, 81 Ill.Dec. 236, 466 N.E.2d 1038 (1984) (reviewing jury verdict for manufacturer in DTP suit), *judgment reaffirmed*, 152 Ill. App.3d 493, 105 Ill.Dec. 608, 504 N.E.2d 893 (1987). There is no federal remedy now, *Wack, supra*, and the federal vaccine act foresees continuation of some state tort claims even after it is effected. Therefore, Illinois's provisions for compensation neither conflict with federal laws nor thwart federal purposes.

■ We join those courts that have held, after evaluating the National Childhood Vaccine Injury Act, that federal regulation does not preempt state tort claims against DTP vaccine manufacturers. *Graham v. Wyeth Laboratories*, 666 F.Supp. 1483 (D.Kan.1987); *Morris v. Parke-Davis & Co.*, 667 F.Supp. 1332 (C.D.Cal.1987) (vacating previous memorandum opinion that had found preemption); *Patten v. Lederle Laboratories*, 655 F.Supp. 745 (D.Utah 1987). *Cf. Wack, supra* (lack of federal civil remedy bars preemption); *Smith v. Wyeth Laboratories*, No. 84– 2002, mem. op. (S.D. W.Va. Aug. 21, 1986) (without considering vaccine act, found no preemption because no federal provisions for compensation then existed). Wyeth's motion for summary judgment on the preemption ground is denied.

We turn to the merits of this lawsuit. At the hub are Wyeth's warnings regarding the DTP vaccine. Plaintiffs seek to recover from Wyeth for failure to warn, based alternatively on theories of negligence and strict liability, and for intentional misrepresentation of facts. Complaint ¶¶ XXI–XXV, XXVI, XXXI, XXXV. They further allege that Wyeth should be liable for designing a defective vaccine and for breaching implied warranties of merchantability and fitness. *Id.* ¶¶ XXIX, XXXIV, XXXVII–XLVII. As we shall see, adequacy of the warnings affects consideration of these latter claims.

Under Illinois law, a drug manufacturer has a duty to warn adequately of any risks about which it knew or should have known at the time it sold the product; failure to warn exposes the manufacturer to strict liability. *Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 33, 37 Ill.Dec. 304, 308, 402 N.E.2d 194, 198 (1980). The manufacturer's warnings are deemed adequate if they: are in a form likely to catch a physician's attention; contain language clearly conveying the dangers; and are intense enough to provoke a physician to proceed cautiously. *Mahr v. G.D. Searle & Co.*, 72 Ill.App.3d 540, 562, 78 Ill.Dec. 624, 630, 390 N.E.2d 1214, 1230 (1979). The adequacy of warnings is a question for the trier of fact in Illinois. *Id.* Yet a manufacturer may obtain summary judgment if plaintiffs fail to "present competent medical expert testimony" countering the manufacturer's evidence of adequacy. *White v. Wyeth Laboratories, Inc.*, Nos. 52108 & 52564, slip op. at 13 (Ohio App. July 30, 1987) [Available on WESTLAW, OH–CS database].

■ Plaintiffs argue that Wyeth has a duty to warn them as patient and parents. Complaint ¶ XXXV. The Illinois Supreme Court, however, recently held that a drug manufacturer's duty to warn extends only to the physician. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill.2d 507, –– –– ––, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987). It is the physician's duty in turn to use his medical judgment to relay the manufacturer's warnings to his patients. *Id.* at ––, 111 Ill.Dec. 944, 513 N.E.2d 387.

The prescribing physician in this case, Dr. Ishtiaque Bangash, stated in a deposition that before vaccinating Joshua Martinkovic, he read Wyeth's package insert regarding its 1982 DTP vaccine. Memorandum in Support of Defendant Wyeth Laboratories Inc.'s Motion for Summary Judgment [Def. Mem.], Ex. B. [Bangash dep.] at 2–4. The insert stated in part:

Contraindications

. . . .

Occurrence of any of the following signs, symptoms, or conditions following administration is a contraindication to further use of this product . . . : fever over 103

[degrees] F ...; convulsion(s) with or without accompanying fever; alterations of consciousness; focal neurologic signs; screaming episodes (also called screaming fits); shock; collapse; thrombocytogenic purpura.

The presence of an evolving or changing neurologic disorder is a contraindication to use....

Def. Mem., Ex. K (footnote omitted). *See also* Bangash dep. at 3–4. The insert proceeds to elaborate on these adverse reactions, stating, "The incidence of these reactions is unknown, but they seem to be exceedingly rare. Should such reactions occur, further immunization against pertussis is contraindicated." Def. Mem., Ex. K. The insert ends with a list of articles detailing the effects of the vaccine. *Id.*

■ The crucial question is whether the incidence of adverse reactions indeed seems exceedingly rare. Bangash, quoting an unidentified document, said in his deposition that the rate of convulsions was one in every 7,000 children. Bangash dep. at 18. And because he believed side effects to be so "rare," Bangash gave Joshua two pertussis vaccines after the first indication that the child had a seizure disorder. *Id.* at 2, 21–22, 53. Meanwhile, an article cited in Plaintiff's Memorandum in Opposition at 26 states that one study had found convulsions as infrequently as once in 800,000 immunizations. Cody, Baraff, Cherry, Marcy & Manclark, *Nature and Rates of Adverse Reactions Associated with DTP and DT Immunizations in Infants and Children*, 68 Pediatrics 650, 656 (1981). The authors' own study, however, revealed convulsions in one of every 1,750 children. *Id.* Relying on this last figure, the court in *Smith v. Wyeth Laboratories*, No. 84–2002, mem. op. at 23 (S.D.W.Va. Aug. 21, 1986), held Wyeth's package insert adequate as a matter of law. "Categorizing one in every seventeen hundred fifty as exceedingly rare may be a slight exaggeration," it wrote. "However, such a rate of complications can hardly be characterized as common." *Id.* at 22.

In this case, however, plaintiffs have submitted evidence that adverse reactions are more common. Dr. John Tilleli, a board-certified pediatrician and toxicologist, states in an affidavit that he has reviewed internal Wyeth documents that indicate the seizure rate is one in 300 injections. Tilleli affid., ¶ 17. That rate cannot be considered "exceedingly rare" as a matter of law. Thus plaintiffs have established that an issue of fact remains regarding what Wyeth knew or should have known of the incidence of adverse reactions when it prepared the 1982 package insert. *Cf. Graham, supra* (factual dispute remains on warning issue). This dispute in turn calls into question whether the package insert clearly conveyed the dangers of the vaccination or alerted Bangash to those risks. We deny Wyeth summary judgment on plaintiffs' claims that the warnings were inadequate and misrepresented facts.

■ Plaintiffs further allege that Wyeth should be held strictly liable for selling the vaccine "in a defective condition unreasonably dangerous to the user...." *Restatement (Second) of Torts* § 402A (1965); *see* Complaint ¶ XXXIV. Wyeth asserts as a defense comment k to § 402A, which bars recovery for injuries caused by products that are "unavoidably unsafe" and whose public utility outweighs the risks. *Cf. Kirk, supra,* 117 Ill.2d at — – —, 111 Ill.Dec. 944, 513 N.E.2d 387 (in Illinois, comment k can be applied in product liability suit against drug manufacturer). As a precondition to pursuing a comment k defense, however, Wyeth must establish that the vaccine was both "properly prepared, and accompanied by proper directions and warning." *Restatement, supra,* comment k. *See Toner v. Lederle Laboratories,* 112 Idaho 328, 335–37, 732 P.2d 297, 304–06 (1987); *Lawson v. G.D. Searle & Co.,* 64 Ill.2d 543, 551, 1 Ill.Dec. 497, 501, 356 N.E.2d 779, 783 (1976). Since Wyeth has not established that its warnings were adequate, we need not determine whether the vaccine was unavoidably unsafe within the meaning of comment k.

■ Summary judgment would be inappropriate in any event, for Tilelli's affidavit and accompanying medical articles discussing safer alternatives sufficiently counter

Wyeth's evidence that any danger involved in using the vaccine was unavoidable. *Compare* Tilelli affid., ¶¶ 8–16 & Exs. B–D *with* Def. Mem., Ex. A. *Cf. Graham, supra* ("the decision as to whether a drug, vaccine, or any other product triggers unavoidably dangerous product exemption from strict liability design defect analysis poses a mixed question of law and fact"); *Smith, supra,* at 16 (denying summary judgment on comment k issue); *Toner,* 112 Idaho at 339, 732 P.2d at 308 (comment k issue requires "full evidentiary hearing"). *But see Conafay v. Wyeth Laboratories,* 84–85 Prod.Liab.Rep. (CCH) ¶ 10,487 at 27,903 (D.D.C.1985), *remanded on other ground,* 793 F.2d 350 (D.C.Cir.1986) (applying comment k without analysis). Wyeth's motion for summary judgment regarding plaintiffs' design defect claim is also denied.

 Similarly, adequacy of packaging and production are elements of implied warranties of merchantability and fitness for particular purpose. Ill.Rev.Stat. ch. 26, ¶¶ 2–314, 2–315 (1985). Thus Wyeth is not entitled to summary judgment barring plaintiffs' breach of warranty claims either. *Accord Graham, supra.*

The reasonableness of Wyeth's conduct with regard to production of the vaccine and attendant warnings also is a key element of plaintiffs' negligence claims. *See Restatement, supra,* §§ 291, 388. Wyeth's asserted compliance with FDA requirements regarding the vaccine does not establish this element in favor of Wyeth: compliance is but one factor for the jury to consider in deciding the reasonableness of the manufacturer's conduct. *Malek,* 125 Ill.App.3d at 872, 81 Ill.Dec. at 237–38, 466 N.E.2d at 1039–40. *See also Mahr,* 72 Ill.App.3d at 561, 78 Ill.Dec. at 629, 390 N.E.2d at 1229 ("FDA ... compliance is only minimal and does nothing to abrogate or alter duties arising under common law."). We deny summary judgment on the negligence claims as well.

Finally, Wyeth contends that plaintiffs have not established that it possessed the state of mind necessary to justify imposition of punitive damages. Def. Mem. at 39–41. But we have concluded that a fac-tual dispute exists regarding what Wyeth knew or should have known when it sold the vaccine. It would be premature to determine the applicability of punitive damages until this issue is decided.

## ORDER

Defendant Wyeth Laboratories, Inc.'s motion for summary judgment pursuant to Fed.R.Civ.P. 56 is denied. Cause set for report on status/settlement and to set firmly for trial September 9, 1987 at 9:15 a.m. Trial counsel must appear.