## Reed v. Connaught Laboratories Inc.

*Peter H. Bouman,* for plaintiffs.
*Boyd McDowell III,* for defendant.

O'BRIEN, *J.,* December 3, 1987—Defendant, Connaught Laboratories Inc. manufactures a diphtheria, tetanus and pertussis vaccine known as DTP. On July 28, 1983, the parents of Joshua Reed had their son inoculated with DTP vaccine which had been manufactured by defendant. Shortly thereafter, the child sustained severe and permanent injury. Plaintiffs filed a complaint against defendant alleging state tort claims premised upon strict liability and negligence. Defendant filed an answer and new matter to which plaintiff filed a reply. Following completion of extensive discovery, defendant filed a motion for summary judgment which is now before the court for disposition. In its brief and argument, defendant raises the following issues:

(1) Whether plaintiffs' claims must be dismissed because they are pre-empted by the rules and regulations issued by the Food and Drug Administration with regard to the DTP vaccine.

(2) Whether the warnings set forth in defendant's DTP package insert were sufficient as a matter of law to apprise the prescribing physician of the risks associated with the product as manufactured and sold by it, thereby precluding the imposition of strict liability upon defendant under section 402A of the Restatement of Torts.

(3) Whether the failure of plaintiffs to produce expert testimony during discovery in support of their theories of liability require judgment for defendant at this stage of the proceeding.

The doctrine of federal pre-emption is fundamentally based on Article VI, cl. 2 of the U.S. Constitution:

"The Constitution and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the laws of any state to the contrary notwithstanding."

Federal pre-emption may be express or implied. Where Congress explicitly states its intent that a federal act will supplant state laws, either in the act or in legislative history, pre-emption occurs. *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Furthermore, courts will infer pre-emption upon a showing that (1) Congress intended to occupy the field as evidenced by the pervasiveness of the federal regulatory scheme, by a dominant federal interest or by means established to effect the federal objective; or (2) state laws actually conflict with federal law or impair achievement of the federal objective. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

Although the issue has not yet reached the Supreme Court, a majority of federal courts addressing the issue have concluded that a federal pre-emption of state tort remedies for vaccine related injuries has not occurred. See *Graham v. Wyeth Laboratories,* 666 F.Supp. 1483 (D. Kan. 1987); *Morris v. Parke-Davis & Co.,* 667 F.Supp. 1332 (C.D. Cal. 1987); *Patten v. Lederle Laboratories,* 655 F.Supp. 745 (D. Utah 1987); *Martinkovic v. Wyeth Laboratories Inc.,* 669 F.Supp. 212 (N.D. Ill. 1987); *MacGillvray v. Lederle Laboratories Division,* no. 85-0422-JB (D. N.M. 1987) and *Jeski v. Connaught Laboratories Inc.,* no. A-84-CA-395 (W.D. Tex. 1986). We concur with this conclusion for two reasons. First, Congress has expressly determined in the National Childhood Vaccine Injury Act of 1986 that state law rights to compensation for pre-act injuries are not pre-empted. Second, even absent Congress' express determination, the relevant FDA regulations concerning DTP do not implicitly pre-empt state law.

Congress passed the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. 300 aa-1 et seq. which among other things has established a program for the purpose of compensating persons who sustain vaccine-related injuries or death. Pursuant to this act, vaccine-injured persons are divided into three categories. The first category includes those who were injured by a vaccine administered more than eight years before the enactment of the act. See 42 U.S.C. 300-aa-16(b). This group is not eligible for the compensation programs as provided within the act. The second category includes those who were injured by a vaccine administered less than eight years before the enactment of the act. See 42 U.S.C. 300-aa-11(a)(5) and (6). This category, which includes plaintiff, are eligible for compensation as provided by the act, but are not required to enter the

compensation programs and may choose to pursue a civil tort action. H.Rep. No. 908, 99th Cong., 2nd Sess., pt. 1 at 6 (1986) reprinted in 1987 U.S. Code Cong. & Admin. News at 6355. The third category is comprised of those individuals injured by a vaccine administered after enactment of the act. See 42 U.S.C. 300-aa-11(a)(2). This group must pursue the statutory compensation proceeding. They may however, reject any judgment or award granted pursuant to the proceeding and elect to pursue a civil action against the manufacturer.

The above statutory language not only allows state remedies for pre-act injuries but also does not completely foreclose post-act injuries from seeking redress under state law. In the instant case, the minor plaintiff who was injured on July 28, 1983 and falls within the second category cannot therefore be precluded from instituting a state action. We are in full agreement with the Federal District Court for the District of Utah which stated that "the language of the act itself demonstrates that Congress contemplated that civil tort remedies for vaccine-related injuries have been available, are now available, and will continue to be available under certain circumstances even after the effective date of the act." *Patten v. Lederle Laboratories*, 655 F.Supp. 745 (D. Utah 1987).

Affording plaintiffs the opportunity to bring a state tort action is especially significant where the act in question will not take effect until Congress enacts a special tax to finance the compensation program. See 42 U.S.C. 323(a); *Wack v. Lederle Laboratories*, 666 F.Supp. 123 (N.D. Ohio 1987). Denial of plaintiffs' action would therefore leave them without any remedy whatsoever. We do not believe Congress intended this result, especially in light of the legislative history of the act which clear-

ly assumes the application of state tort law in the absence of the legislation under consideration. The House Committee on Energy and Commerce to whom the act was referred stated as follows:

"[f]or the relatively few who are injured by vaccines — through no fault of their own — the opportunities for redress and restitution are limited, time consuming, expensive and often unanswered. *Currently, vaccine-injured persons can seek recovery for their damages only through the civil tort system or through a settlement arrangement with the vaccine manufacturer.* Over time, neither approach has proven satisfactory. Lawsuits and settlement negotiations can take months and even years to complete. Transaction costs — including attorneys' fees and court payments — are high. And in the end, no recovery may be available. Yet futures have been destroyed and mounting expenses must be met.

"This approach has also been ineffective for the manufacturers of childhood vaccines. *This has become especially true in more recent years as the number of lawsuits — particularly those concerning the DPT vaccine — has increased.*" H.Rep. no. 908, 99th Cong., 2nd Sess. pt. 1, at 1 (1986) (emphasis supplied), *Reprinted in* 1987 U.S. Code Cong. & Admin. News 6344, 6347.

The National Childhood Vaccine Injury Act not only recognizes the prior validity of state tort law in this area, but also expressly contemplates the continuing validity of such law. Section 300aa-22 provides in pertinent part as follows:

"(a) Except as provided in subsections (b), (c) and (e) of this section state law shall apply to a civil action brought for damages for vaccine-related injury or death.

"(b)(1) No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.

"(c) No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part solely due to the manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer.

"(e) No state may establish or enforce a law which prohibits an individual from bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury or death if such civil action is not barred by this part." 42 U.S.C. 300aa-22.

Subsections (b) and (c) state on their face that they apply solely to post-act vaccinations. Subsection (e), although applying to both pre-act and post-act vaccinations, does not narrow the scope of a manufacturer's liability under state law. In the case at bar, subsection (a) is applicable.

It is apparent to us from the statutory language and the accompanying legislative history of the National Childhood Vaccine Injury Act that Congress had not only assumed the existence of state tort remedies as a means of redress for pre-act vaccine-related injuries but also recognized and maintained an open avenue for state law remedies for post-act injuries. Therefore, we conclude that there has

been no express pre-emption of state tort remedies for vaccine related injuries.

Also we are not persuaded that an implied pre-emption of state law remedies has occurred. Defendant alleges an implied pre-emption based on extensive federal regulation of DTP pursuant to the Public Health Service Act, 42 U.S.C. 262 et seq. and the Federal Food, Drug and Cosmetic Act, 21 U.S.C. 301 et seq. Where express intent is lacking, however, there is a strong presumption that Congress did not intend to displace state law. *Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). This presumption may be overcome in narrow instances when an act of Congress touches a field in which the federal interest is dominant and the scheme of federal regulations is so pervasive that it is reasonable to infer congressional intent to pre-empt. *Fidelity Federal Savings & Loan Association v. de la Cuesta, supra.* Alternatively, to the extent state law actually conflicts with federal law, making compliance with both federal and state regulation impossible and the state law stands as an obstacle to the accomplishment of congressional purposes, a pre-emption by implication has been found. See *Florida Lime & Avocado Growers Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

The existence of an implied pre-emption requires that we find, implicit within the regulatory scheme governing the manufacture of DTP, an intent to pre-empt state law remedies. Defendant asserts that due to the comprehensiveness of the FDA's regulations which encompass the licensing, testing, production and distribution of the product, state law is necessarily pre-empted. Extensive federal regulation however does not, without more, compel pre-emption. *Silkwood v. Kerr-McGee Corp., supra.* A

federal intent to pre-empt must be "clear and manifest." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). In *Hillsborough County, Florida v. Automated Medical Laboratories Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985), the Supreme Court stated:

"We are even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes. As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive."

The court continued:

"Moreover, because agencies normally address problems in a detailed manner and can speak through a variety of means . . . we can expect that they will make their intentions clear if they intend for their regulations to be exclusive. Thus, if an agency does not speak to the question of pre-emption, we will pause before saying that the mere volume and complexity of its regulations indicate that the agency did in fact intend to pre-empt. *Given the presumption that the state and local regulation related to matters of health and safety can normally coexist with federal regulations we will seldom infer, solely from the comprehensiveness of federal regulations, an intent to pre-empt in its entirety a field related to health and safety.*" (emphasis supplied)

Neither can we find an actual or direct conflict between the state law applicable to this action and the relevant federal law and regulations. The state tort law at issue here is remedial and compensatory

in nature. Its purpose is not regulatory and does not directly conflict with any aspect of the federal regulatory scheme. The relevant federal statutes and regulations on the other hand, do not provide a means of obtaining compensation for vaccine-related injuries nor do they expressly limit rights to compensation under state common law. Considering that the availability of tort remedies to compensate for personal injuries is a subject matter traditionally regarded as properly within the scope of state superintendance, *Florida Lime & Avocado Growers v. Paul, supra,* we cannot imply pre-emption of the state remedial measures available to plaintiffs in the instant case.

The second issue raised in defendant's motion for summary judgment is whether the warnings as set forth in Connaught's DTP package insert were sufficient as a matter of law to apprise the prescribing physicians of the risks associated with the product, thereby precluding the imposition of strict liability upon defendant. Section 402A of the Restatement (second) of Torts, adopted as law in Pennsylvania, see *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), imposes strict liability on the seller of any product "in a defective condition unreasonably dangerous to the user or the consumer." Where use of a product can be dangerous, adequate warning of the danger is required. A product sold without warning is in a "defective condition". See Section 402 A Restatement (Second) of Torts, comment h.

In the instant case, the issue is whether defendant's warnings adequately informed the prescribing physicians about the product. Defendant asserts that its warnings are adequate, and presents the deposition testimony of Michael Markarian, M.D. and Elizabeth Koscelnak, R.N. in support of its assertion. Dr. Markarian prescribed and administered

the second DTP injection to the minor plaintiff, and Nurse Koscelnak administered the third injection. Their testimony reflects that they read the package insert and were familiar with the contraindications and adverse reactions as presented.

Plaintiffs allege that the warnings found within Connaught's DTP package insert are inadequate, and therefore the deponents' familiarity with those warnings do not make them adequate as a matter of law. In support of their assertion, plaintiffs present the affidavit of Kevin C. Geraghty, M.D. Dr. Geraghty states that the product insert in question did not inform Dr. Michael Markarian and Nurse Koscelnak of the following:

"(a) The actual incidence of severe adverse reactions to its vaccine;

"(b) The fact that the company had not run large, clinical field trials of the kind necessary to develop an incidence figure for serious adverse reactions to DTP;

"(c) The amount of endotoxin or pertussis toxin in any particular vial or batch;

"(d) The effects that endotoxin and pertussis toxin can have on the human body;

"(e) The fact that Connaught had never solicited reports of serious adverse reactions to its DTP so as to be able to fully advise doctors of actual product experience;

"(f) The fact that there were other preparations of pertussis vaccine that were equally effective and far less toxic."

Pa. R.C.P. 1035 provides in pertinent part as follows:

"(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any

depositions, answers to interrogatories, admissions on file and supporting affidavits.

"(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issues of liability alone although there is a genuine issue as to the amount of damages."

Defendant, as moving party for summary judgment, has the burden of convincing this court that there is no genuine issue of fact, and all doubts are to be resolved against the granting of the motion. *Price v. Pavoni,* 225 Pa. Super. 286, 302 A.2d 452 (1973). If there is a genuine issue as to any material fact, defendant's motion for summary judgment will be denied. *Id.* In the instant case, a genuine issue of fact exists regarding the adequacy of the warnings contained within defendant's DTP package insert. We therefore cannot grant defendant's motion for summary judgment on this issue. The determination of whether warnings are adequate in a product's liability case is a question for the jury. *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971).

Finally, defendant complains that plaintiffs have failed to produce unequivocal testimony of an expert witness to support each theory of liability. In support of this argument, defendant cites *Sherk v. Daisy-Heddon,* 498 Pa. 594, 450 A.2d 615 (1982) and *Dambacher by Dambacher v. Mallis,* 336 Pa. Super. 22, 485 A.2d 408 (1984). However, these cases involved appellate review of a trial court's

rulings on post-trial motions, not a pretrial motion for summary judgment. In any event, the record in the instant proceeding indicates that plaintiffs have disclosed the identity of expert witnesses with respect to the issues pertaining to the design, manufacturer and warnings for defendant's vaccine. Therefore, defendant's argument is without merit.

## ORDER

And now, December 3, 1987, the motion of defendant Connaught Laboratories Inc. for summary judgment is denied.